NOT DESIGNATED FOR PUBLICATION

Nos. 119,077
119,078

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID J. CAMPBELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed April 5, 2019. Affirmed in part and dismissed in part.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and POWELL, JJ.

PER CURIAM: David J. Campbell appeals the district court's decision revoking his probation and ordering him to serve his underlying prison sentences in two separate cases. Campbell claims the district court erred in revoking his probation without imposing the appropriate intermediate sanctions. Specifically, he argues that the district court's offender welfare finding used to circumvent the intermediate sanctions was not supported by the record. We find no error and affirm the district court's judgment.

On January 27, 2017, in Sedgwick County Case no. 16CR3554, Campbell pled guilty to possession of methamphetamine. On May 8, 2017, the district court sentenced Campbell to 14 months' imprisonment but granted probation, including mandatory substance abuse treatment, for 18 months to be supervised by community corrections.

About two weeks later, the State issued a warrant for Campbell's arrest alleging that he had violated the conditions of his probation by failing to enter his statutorily mandated substance abuse treatment program, by committing an aggravated weapons violation, and by moving to a different residence without receiving permission from his intensive supervision officer (ISO). At a hearing on June 19, 2017, Campbell did not contest the allegations against him. The district court found that Campbell had violated the conditions of his probation, and the court extended Campbell's probation for 12 months and ordered that he serve a 3-day jail sanction.

Just 10 days later, the State issued a new warrant alleging that Campbell had self-discharged from substance abuse treatment in violation of his probation and that his whereabouts were unknown. Then, on July 19, 2017, as a result of the previously mentioned weapons violation, the State filed a new charge against Campbell of criminal possession of a weapon by a convicted felon in 17CR2073.

Campbell pled guilty to the new charge, and the district court held a combined hearing for the probation violation as well as sentencing on the weapons charge on October 31, 2017. At this hearing, the district court followed the parties' plea agreement for the weapons case and sentenced Campbell to 9 months' imprisonment but granted probation for 18 months. The district court ordered the new sentence to run consecutive to the sentence in the prior case. In 16CR3554, the district court extended Campbell's probation for 18 months and ordered another 3-day jail sanction. The district court also ordered Campbell to report immediately to his ISO upon his release from jail.

Less than two weeks later, the State issued a warrant in both cases alleging that Campbell had failed to report to his ISO upon his release from jail. At a hearing in both cases on January 3, 2018, Campbell stipulated to violating his probation by failing to report. At the hearing, the ISO reviewed Campbell's history of failing to report and failing to complete mandated drug treatment. The ISO completed her remarks by stating, "In my opinion, [Campbell] is not amenable to probation. I mean, the simplest thing is walking through the door and he can't do that." The prosecutor asked the district court to find that probation was no longer in Campbell's best interest, and he stated that "given his track record of not reporting, not going to treatment, or not following through with treatment, we can't help him address his sobriety if he's not engaged in the process, Your Honor." Campbell's counsel asked that he receive another chance at probation.

After hearing arguments of counsel, the district court revoked Campbell's probation in both cases and ordered him to serve his underlying sentences, finding that Campbell's welfare would not be served by imposing any more intermediate sanctions. The district court stated:

> "The issue in my mind is that the welfare of Mr. Campbell isn't served by any sanction.
>
> "Let's remember the [first] case is a Senate Bill 123 case. It's a legislatively-mandated treatment disposition that the courts, absent some criminal history issues, has no discretion on. . . . I was mandated to do the treatment.
>
> "I overlooked the crime that was committed in the [new] case. That crime committed on May 21st, which was less than two weeks after sentencing. I overlooked that and continued to work with Mr. Campbell.
>
> "Ultimately the inpatient treatment was what was recommended for Mr. Campbell, and that's what I ordered at a recent hearing and we discussed that somewhat and he self discharges.
>
> "So it begs the question, what's the point of a soak? The issue is not whether there is treatment at KDOC that's going to help Mr. Campbell. That answer is the [definitive] no. The issue is not whether incarceration in any context positively furthers somebody's life, but here we have the opportunity presented and you self discharge after

3

a few days, you don't report, phone calls, for what it's worth. I didn't know what that means. I appreciate the appointment of the Senate Bill 123, it's not a works program, it's a treatment program.

"If Senate Bill 123 was to start your own construction company, there probably wouldn't be a probation violation hearing here. But since the State has mandated that he receive treatment, and he just walks away after a second probation violation in the [first] case from inpatient treatment, a soak is not going to do any good. There's no treatment that's going to do further good for Mr. Campbell when he comes back on probation.

"It doesn't serve any purpose, a soak, and to that end his welfare is not served. He might as well finish the case and serve out the remaining time, which is about a year from now, be on post-release and then just move forward.

"I recognize in the [new] case that there [has] been no prior probation violation hearing, but the same—the same analysis applies as far as substance abuse. You have basically taxpayers footing the bill to try to help people who walk away from it. What else should be done here? I just don't believe Mr. Campbell's welfare is being served by any further actions short of revocation.

"So both cases, that's the order and, obviously, the original post-release applies as well.

"So Ms. Kluzak, obviously that record has to be made by me, because I think in (c)(9) of 22-3716, says I have to say specifically why the defendant's welfare was served, so that's the record I would want to make."

Campbell timely filed a notice of appeal in each case. The cases have been consolidated on appeal.

On appeal, Campbell claims the district court erred in revoking his probation without imposing the appropriate intermediate sanctions. Specifically, Campbell argues that the district court's "finding that a sanction would not serve [his] welfare was not supported by the record." Conversely, the State argues that the district court's findings were supported by the record and were sufficient to establish that allowing Campbell to remain on probation would not have served his own welfare.

4

The procedure for revoking a defendant's probation is governed by K.S.A. 2018 Supp. 22-3716. Generally, once there has been evidence of a violation of the conditions of probation, the decision to revoke probation rests in the district court's sound discretion. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). An abuse of discretion occurs when judicial action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *State v. Moser*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). The party asserting the district court abused its discretion bears the burden of showing such an abuse of discretion. *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

Campbell argues that the district court abused its discretion when it bypassed the intermediate sanctions of K.S.A. 2018 Supp. 22-3716. This statute generally provides that once a defendant has violated the conditions of probation, the district court must apply graduated intermediate sanctions before the court can revoke probation and order the defendant to serve the sentence imposed. See K.S.A. 2018 Supp. 22-3716(c)(1)(A)-(D). But under K.S.A. 2018 Supp. 22-3716(c)(9)(A), the court may revoke probation without having previously imposed an intermediate sanction if the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the offender will not be served by such a sanction. Whether the district court's reasons are sufficiently particularized as required by statute is a question of law over which an appellate court has unlimited review. See *State v. McFeeters*, 52 Kan. App. 2d 45, 47-48, 362 P.3d 603 (2015).

Campbell does not argue that the district court failed to address explicitly how his welfare would not be served by the imposition of the intermediate sanction as required by the statute. Instead, Campbell argues that the district court's finding under K.S.A. 2018 Supp. 22-3716(c)(9)(A) that his welfare would not be served by the imposition of intermediate sanctions "was not supported by the record."

Campbell argues that the district court's reliance on his self-discharge from drug treatment was insufficient to support the court's offender welfare finding because this allegation had been made in a prior warrant which resulted in a three-day jail sanction. Campbell maintains that the district court's concern for his welfare was "disingenuous" at the final probation revocation hearing because the district court "expressed no concern" for his welfare when the violation was litigated at the prior hearing.

Campbell uses this same reasoning while discussing the weapons violation that led to another probation violation and another felony charge. Campbell acknowledges that the district court could have revoked his probation after he pled no contest to the weapons charge, but he emphasizes that the district court granted probation instead. Campbell argues, "The district court had two prior opportunities to express concern that an intermediate sanction would not serve [his] welfare because he had committed a new crime on probation. . . . It did not do so."

The district court based its findings at the last probation revocation hearing on a review of the entire record, including Campbell's previous probation violations. The January 3, 2018 hearing was Campbell's third probation violation hearing. As the district court noted at the hearing, it could have revoked Campbell's probation at an earlier hearing because he had committed a new crime while on probation. Even so, the district court gave Campbell another chance at probation at the prior hearing and ordered him to report to his ISO upon his release from his three-day jail sanction.

Campbell squandered this opportunity by failing to report and by failing to enter drug treatment. Campbell was convicted of possession of methamphetamine in 16CR3554 and, as the district court noted, Senate Bill 123 mandated that Campbell receive drug treatment as a condition of his probation. It only makes sense that if Campbell refused to participate in mandatory drug treatment as a condition of his probation, then another chance at probation was not in Campbell's best interest and did

6

not serve his own welfare. Just because the district court was willing to give Campbell another chance at the second probation violation hearing did not mean that the court could not consider Campbell's entire record on probation at the third violation hearing.

One of the more remarkable aspects of Campbell's record on probation is how quickly he violated his conditions of release each time the court gave him a chance. We conclude that the district court's finding that continued probation would no longer serve Campbell's own welfare was supported by the record. The district court's decision to revoke Campbell's probation was not arbitrary, fanciful, or unreasonable, and it was not based on an error of fact or law. Campbell has failed to show that the district court abused its discretion by revoking his probation and ordering him to serve his sentences.

Finally, as a separate issue, Campbell argues that the journal entry of probation revocation in each of his cases erroneously stated that the district court revoked his probation based on a "public safety" finding as well as an "offender welfare" finding under K.S.A. 2018 Supp. 22-3716(c)(9)(A). Campbell argues that the journal entries "must be corrected to reflect the district court's findings." The State concedes that Campbell is correct but points out that after Campbell filed his brief on appeal, the State added to the record two nunc pro tunc orders in which the district court corrected the language in the journal entries and made the appropriate finding in each case. The corrected journal entries provide the relief Campbell has requested, so this issue is dismissed as moot. See *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012) (holding that an appellate court does not consider moot issues).

Affirmed in part and dismissed in part.